UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

NIGEL GROVES,

        Plaintiff,

        v.         Case No. 19-C-1453

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY, S.I.,

        Defendant.

---

**DECISION AND ORDER GRANTING PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

    This is a diversity action in which Plaintiff Nigel Groves, an Illinois resident, sued the insurer of his summer cabin, Defendant American Family Mutual Insurance Company, S.I., a Wisconsin Corporation with its principal place of business in Madison, Wisconsin, for breach of contract and bad faith. Plaintiff filed a motion for partial summary judgment on the breach of contract claim, which has since been supplemented with an affidavit by the insured setting forth the facts supporting his claim. Plaintiff seeks a determination that the undisputed evidence establishes as a matter of law American Family breached its contract by partially denying his claim for damages to his vacation home caused by a roof collapse. For the reasons that follow, Plaintiff's motion will be granted.

**BACKGROUND**

    Plaintiff is the owner of a summer cabin in Marinette County, Wisconsin. Plaintiff and his wife purchased the property in 1999 and 2001. When their children were young, Plaintiff and his family would occasionally visit their property in the winter, but the cabin was primarily used

during the warmer months. Over the years, Plaintiff would winterize the cabin in the fall by draining the pipes, turning off the water, and shutting off the heat. Due to their decreasing use of it as a vacation or summer home, Plaintiff and his wife decided to sell the property in late 2013 or early 2014.

In August of 2017, Plaintiff hired North Country Real Estate to find a purchaser and represent him in the ensuing transaction. The property was shown to prospective buyers on January 12 and January 27, 2019. The real estate agent drove by the house on May 25, 2019, but did not go inside. There was no report of any damage to the house after those visits.

On May 29, 2019, Plaintiff received an email from the real estate agent informing him that while showing the house to a prospective buyer, he discovered that the roof of the cabin has collapsed. The ceiling fell in and there was black mold "everywhere, ceiling, 4' up the walls." Aff. of Nigel Groves, Ex. F, Dkt. No. 31-7 at 2. Plaintiff, who was in Arizona at the time, notified his insurer, American Family, the same day. The following day, he and his wife left Arizona and arrived at their home in Illinois on June 3, 2019.

On June 6, 2019, American Family notified Plaintiff that it was denying his claim. Shortly thereafter, American Family advised Plaintiff that it had reconsidered its position and would pay for the roof damage but not the mold or its contents. Plaintiff visited the property to inspect the damage on June 8, 2019. He noted that mold had formed throughout the kitchen, family room, bathroom, one bedroom, and on the personal property. Plaintiff set up a dehumidifier to reduce moisture and contacted a building contractor to assess the damage and estimate the cost of repairs.

On June 19, 2019, American Family notified Plaintiff that it had estimated the structural damage to Plaintiff's property, after applying the deductible, at $13,815.22. The following day, American Family notified Plaintiff that it had completed its investigation of his claim for winter

weather damage to his property. The notice informed Plaintiff that the inspection "found mold growth that was caused by leaving the interior of your home exposed to the elements over a long period of time." *Id.*, Ex. I, Dkt. No. 31-10. American Family noted that Plaintiff stated that his last visit to the property before the loss was in the fall of 2018, and that the loss must have occurred sometime in mid-March. Plaintiff did not know of the damage until his realtor discovered it in May of 2019, at which time he notified American Family, and had not visited the site as of June 6, 2019. The notice advised Plaintiff that American Family was changing the date of loss to March 15, 2019, because that was the date with the most significant snowfall.

Because he had failed to prevent further damage after that time, American Family advised Plaintiff that he had not complied with the policy provisions and that it would not consider any payment for mold clean up that was caused by not checking on the property for so long a period of time after the loss occurred. *Id.* Referring to the written terms of the policy, the notice stated that it excluded any losses caused by "neglect of any insured to use all reasonable means to protect covered property at and after the time of loss." The notice also noted that the policy imposed on the insured the duty to "protect the property from further damage, make reasonable and necessary repairs to protect the property and keep records of these repairs." *Id.* Based upon these policy provisions and Plaintiff's failure to take prompt steps to protect the property after the loss, American Family advised Plaintiff that his claim for additional damages was denied.

In August 2019, American Family revised its estimate of the loss and paid Plaintiff an additional $5,682.64, bringing its total payout to $19,609.53. However, the insurer maintained its denial of coverage for damage that occurred after the roof collapsed, but before it was discovered in May. Plaintiff thereafter commenced this action alleging that American Family had breached

3

the insurance contract by refusing to pay the full amount of damages caused by the roof collapse and that its refusal was in bad faith.

On December 5, 2019, American Family filed a motion to bifurcate the breach of contract and bad faith claims, and to stay discovery on the bad faith claim until the breach of contract claim was resolved. Plaintiff filed a combined brief in opposition and a motion for partial summary judgment on the breach of contract claim. On March 24, 2020, the court granted American Family's motion to bifurcate and stay discovery on the bad faith claim, and on July 8, 2020, the court issued a decision noting that Plaintiff's motion was not supported by admissible evidence. Because admissible evidence appeared readily available, however, the court did not deny the motion but granted Plaintiff leave to supplement it. Plaintiff filed his supplemental affidavit in support on July 16, 2020, and American Family responded by letter on August 5, 2020. The court heard argument on August 12, 2020, and took the matter under advisement.

## DECISION

The procedure for summary judgment was set out in the court's previous order on Plaintiff's motion and will not be repeated here. The issue presented by Plaintiff's motion is whether the undisputed evidence establishes as a matter of law that American Family breached its policy of insurance. Although American Family has argued that Plaintiff's motion is premature, it has not filed an affidavit showing that "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). Instead, American Family argues that Plaintiff is not entitled to summary judgment on his breach of contract claim because the undisputed evidence does not support Plaintiff's contention that the damage caused by exposure to the elements after the roof collapse is covered by the policy. American Family argues that such damage is not covered for two reasons: first, because it is excluded by the neglect exclusion, and second, because

4

Plaintiff failed to promptly notify American Family of the loss and mitigate his damages. Def.'s Mem. in Opp., Dkt. No. 21, at 4.

There is no dispute that the damages resulting from a roof collapse fall within the initial grant of coverage under the policy of insurance issued by American Family to Plaintiff. American Family issued a Wisconsin Homeowners Policy to Plaintiff under which American Family agreed to provide supplementary insurance coverage for collapse, defined as "risk of direct physical loss to covered property involving collapse of a building or any part of a building caused by . . . (e) weight of rain or snow which collects on a roof . . . ." Decl. of Joshua M. Greatsinger, Ex. A, Dkt. No. 19-1 at 7–8. American Family contends, however, that coverage for the additional damage caused by exposure to the elements after the collapse, including the mold damage, is excluded by the neglect exclusion. That exclusion applies to any "loss caused directly or indirectly by . . . **[n]eglect** of any **insured** to use all reasonable means to protect covered property at or after the time of loss." *Id.* at 11.

Citing various dictionaries, American Family notes that the word "neglect" means "to fail to care for or attend to properly;" "to fail to do through carelessness or oversight;" "to leave undone or unattended to especially through carelessness;" "to pay no attention to or little attention to;" "to be remiss in the care and treatment of;" and "to omit, through indifference or carelessness." Def.'s Mem. in Opp., Dkt. No. 21 at 6 (citing AMERICAN HERITAGE DICTIONARY (4th ed. 2001), THE MERRIAM-WEBSTER.COM DICTIONARY, and DICTIONARY.COM). It is for a jury to determine, American Family contends, whether Plaintiff's leaving his property vacant for upwards of eight months, failing to monitor the property during a severe winter, and failing to periodically visit the property can constitute neglect. American Family argues that the limited factual record suggests that Plaintiff failed to ensure periodic inspection of property in a wooded location known for severe

5

winter weather. *Id.* At a minimum, American Family contends, there remains a dispute of material fact as to this issue. *Id.* at 7.

Under Wisconsin law, the interpretation of an insurance policy is ordinarily a question of law. *Stuart v. Weisflog's Showroom Gallery, Inc.*, 2008 WI 86, ¶ 18, 311 Wis. 2d 492, 753 N.W.2d 448. Generally, "an insurance policy's terms should be interpreted as they would be understood by a reasonable person in the position of the insured. *Id.* (citing *State Farm Mut. Auto. Ins. Co. v. Langridge*, 2004 WI 113, ¶ 47, 275 Wis. 2d 35, 683 N.W.2d 75). If an insurance policy's language is ambiguous, i.e., susceptible of more than one reasonable interpretation, the court should construe it in favor of coverage. *Cardinal v. Leader Nat'l Ins. Co.*, 166 Wis. 2d 375, 382, 480 N.W.2d 1 (1992). Exclusions to insurance coverage must be narrowly construed against the insurer, especially if their effect is uncertain. *Id.*

When determining whether an insurance policy provides coverage, the court is to examine the facts of the claim and the language of the policy to determine whether the policy's insuring agreement makes an initial grant of coverage. *Day v. Allstate Indem. Co.*, 2011 WI 24, ¶ 26, 332 Wis. 2d 571, 798 N.W.2d 199 (citing *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 22, 311 Wis. 2d 548, 751 N.W.2d 845). If the claim triggers the initial grant of coverage, the court must determine whether any of the various exclusions preclude coverage for the claim. *Id.* Importantly, the insured bears the burden of showing an initial grant of coverage. Once that initial burden is met, however, the burden shifts to the insurer to show that an exclusion nevertheless precludes coverage. *Id.* (citing *Am. Family Mut. Ins. Co. v. Schmitz*, 2010 WI App 157, ¶ 8, 330 Wis. 2d 263, 793 N.W.2d 111).

In this case, it is undisputed that American Family issued a homeowner's insurance policy for a seasonal vacation home. A roof collapse occurred sometime over the winter, and the insured

did not discover the collapse until late May. Upon discovery of the loss, the insured immediately notified American Family, but because of the delay between the collapse and its discovery, extensive damage, including the formation of mold on the walls, occurred to the interior. There is also no dispute that the damage that existed as of the date American Family was notified of the loss falls within the initial grant of coverage. The question that remains is whether American Family has cited evidence from which a jury could reasonably find that coverage is excluded by the neglect exclusion.

That exclusion, to repeat, applies to loss "caused directly or indirectly by the neglect of any insured to use all reasonable means to protect covered property at or after the time of loss." It is clear from the language used that the duty to "use all reasonable means to protect covered property" arises only "at or after the time of loss." Thus, any failure to have the roof inspected before winter or hire someone to perform periodic inspections prior to the collapse is irrelevant. Furthermore, the word "neglect," as the dictionary definitions cited by American Family suggest, has a clear connotation of some degree of knowledge, fault, or carelessness. One cannot be neglectful of taking reasonable action to protect covered property at or after the time of loss if one has no reason to believe any loss has occurred. In other words, "the insured must have knowledge of a readily identifiable, imminent, and real peril, endangering the property" for the neglect exclusion to apply. *Tuchman v. Aetna Casualty & Surety Co.*, 52 Cal. Rptr. 2d 274, 279, 44 Cal. App. 4th 1607 (1966); *see also Cherewick v. State Farm Fire and Casualty*, No. 3:20-cv-00693-BEN-MSB, 2020 WL 3971515, at *6 (S.D. Cal. July 14, 2020) ("To apply the neglect exclusion, defined as 'neglect of insured to use all reasonable means to save and preserve property at and after time of loss or when property is endangered by peril insured against,' the insured must have knowledge of a 'readily

7

identifiable, imminent, and real peril, endangering the property.'" (quoting *Tuchman,* 52 Cal. Rptr. 2d at 279)).

American Family's suggestion that it is unreasonable for the owner of a vacation home to fail to periodically check his home throughout the winter months so as to be able to promptly take steps to protect the interior in the event the roof collapses is absurd. Homes in Wisconsin, even vacation homes, are built to withstand heavy snowfalls, and thus it is not unreasonable to assume that one's roof will not collapse. If American Family wanted to require periodic inspections to guard against such losses, it should have written a different policy. But just as the court cannot rewrite a policy to bind an insurer to a risk it did not contemplate and for which it did not receive a premium, *Hischhorn v. Auto-Owners Ins. Co.*, 2012 WI 20, ¶ 24, 338 Wis. 2d 761, 809 N.W.2d 529, a court cannot rewrite a policy to remove coverage it otherwise granted and failed to clearly exclude.

Here, it is undisputed that Plaintiff had no knowledge of the loss until May 29, 2019, at which time he promptly notified American Family. It follows that the neglect exclusion does not apply to any loss or damage that occurred prior to that date. The same is true of the duty to mitigate damages and protect the property from further damage. No duty to "protect the property from further damage" or "make reasonable and necessary repairs to protect the property" could arise until Plaintiff knew of the loss and the need to do so. American Family's denial of coverage for the additional damage that occurred after the collapse but before its discovery therefore constitutes a breach of its contract.

American Family's argument that it was not promptly notified of the loss is even weaker. The policy states that in the event of a loss, the insured must "give notice as soon as reasonably possible to us or our agent." Dkt. No. 19-1 at 13, ¶ 19(a). It is undisputed that Plaintiff notified

8

American Family of the collapse the same day he learned of it.  It is not possible for him to have given notice of the loss before he learned of it himself.  *See Kolbeck v. Rural Mutual Ins. Co.*, 70 Wis. 2d 655, 659, 235 N.W.2d 466 (1975) ("It is not the duty of the insured to make a report unless he has reasonable grounds to believe that he is a participant in an accident."); *see also Garcia v. Regent Ins. Co.*, 167 Wis. 2d 287, 305, 481 N.W.2d 660 (Ct. App. 1992) (holding that "an occurrence, standing alone, cannot trigger the duty to report. Rather, this statement must be read in conjunction with *Kolbeck*'s earlier holding that the insured must have reasonable grounds to believe that he or she was a participant in the accident").  The notice provision in this case was met.

Finally, American Family notes "[t]here is also an absence of fact regarding representations made by the plaintiff to American Family when the policy was written: whether the property would be used as a vacation home, how frequently the plaintiff would use the home, and whether the home was equipped with a monitoring system or would be periodically inspected." Def.'s Mem. in Opp., Dkt. No. 21, at 9.  But these are facts of which American Family would have direct knowledge through its agent.  If American Family intended to assert misrepresentation as a defense to coverage, it should have done so, or at least submitted an affidavit under Rule 56(d) explaining why it was unable to do so.  Summary judgment is the "put up or shut up" moment in a lawsuit.  *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003).  Having failed to raise such a defense or explain its inability to do so, it must be considered waived.  *See Diversey Lever, Inc. v. Ecolab, Inc.*, 191 F.3d 1350, 1353 (Fed. Cir. 1999) ("[A]n affirmative defense must be raised in response to a summary judgment motion, or it is waived.").

Plaintiff's motion for summary judgment on his breach of contract claim is therefore granted as to the issue of liability.  The total amount of damage the property sustained, and whether

9

additional damage that could have reasonably been avoided occurred after Plaintiff became aware of the loss on May 29, 2019, are factual disputes that remain to be resolved before Plaintiff's breach of contract claim can be finally resolved. The fact that damages are uncertain, however, does not mean that summary judgment cannot be granted on the issue of liability. Accordingly, Plaintiff's motion for partial summary judgment is granted, and the clerk shall set this matter on the court's calendar for a telephone conference to address further proceedings.

**SO ORDERED** at Green Bay, Wisconsin this 14th day of August, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge
